803 So.2d 815 (2001)
Lavonte Diedrell MAXWELL, Appellant,
v.
STATE of Florida, Appellee.
No. 5D00-2221.
District Court of Appeal of Florida, Fifth District.
December 28, 2001.
*816 James B. Gibson, Public Defender, and Marvin F. Clegg, Assistant Public Defender, Daytona Beach, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Angela D. McCravy, Assistant Attorney General, Daytona Beach, for Appellee.
SHARP, W., J.
Maxwell appeals from his convictions and sentences after a jury convicted him of *817 aggravated battery causing great bodily harm (count two),[1] aggravated battery with a deadly weapon, (count three),[2] attempted robbery with a deadly weapon (count four),[3] kidnaping (count five),[4] and aggravated battery with a deadly weapon (count six).[5] The trial court granted a motion for judgment of acquittal on count one, attempted first degree murder. Maxwell received a Prison Releasee, thirty-year sentence for count two, concurrent fifteen-year terms for counts three, four and six, and a concurrent life sentence for count five.
The criminal charges grew out of an episode during which Maxwell attacked Young, an elderly man, with whom Maxwell and his girlfriend were sharing an apartment. Young had fallen asleep on the sofa in the living room while watching television. Angie Charles, a friend of Young's, was also sleeping on a couch in the living room. Maxwell entered the apartment and seemed to be peeking from a bedroom at Young. Charles inquired what he was doing and he said he was waiting for Young to go to sleep.
After Charles dozed off again, Maxwell attacked Young, beating him in the face and head, and also stabbing him. Young was cut under the chin, in the shoulder, sides, nose and stomach. He yelled, "Please don't kill me," awaking Charles. She tried to pull Maxwell away from Young, but Maxwell attacked her. He hit her on the head with his knife and she fell. He then tied her up with electrical cord and threw a sheet over her head.
Young went into the bathroom to examine his injuries. He returned to the living room and told Maxwell he had better get him an ambulance, or he was going to die. Maxwell said: "I intended to kill you anyway." Maxwell also demanded Young give him his wallet and Young said he had no money.
Maxwell had a change of mind. He untied Charles so that she could call for help for Young from a pay phone. He accompanied her to the pay phone to monitor her call. They returned to the living room where Young was waiting. Young told Maxwell to wait at the apartment until his surgery was over and he would give him money, since he wanted it so badly. Maxwell asked Young not to tell on him and Young promised. However, Charles told the police who had attacked Young and later Young confirmed it.
Maxwell argues that the trial court erred in denying his motion for judgment of acquittal on the kidnaping charge which related to Charles, because his tying her up was merely incidental to the underlying offense and it was not performed in order to commit or facilitate the commission of any other felony. The kidnaping statute, section 787.01(a)(2) provides:
The term "kidnaping" means forcibly, secretly, or by threat confining, abducting, or imprisoning another person against her or his will and without lawful authority, with intent to:

2. Commit or facilitate commission of any felony. (Emphasis added)
It is first necessary to determine what, if any, felony was facilitated by Maxwell's having tied up Charles. The charging document sets out robbery, aggravated battery or murder. He was acquitted of attempted murder and the aggravated batteries *818 on both Charles and Young had been completed by the time he bound Charles and covered her with a sheet. Maxwell argues that the attempted robbery was also complete at that time. However, the evidence supports the view that during the five or so minutes Charles was confined, Maxwell demanded Young give him his wallet. Although Maxwell was not successful in obtaining Young's wallet, it appears he intended to rob him at that point. The fact that Young talked Maxwell out of continuing with the robbery does not negate the fact that at the time Maxwell tied Charles up he intended to rob Young. Pursuant to the statute, intent to commit a felony is sufficient.
Faison v. State, 426 So.2d 963 (Fla. 1983) establishes a three-part test to determine whether the confining of a person to facilitate the commission of another crime is kidnaping. First, the confinement of a victim in order to facilitate the commission of a felony must not be slight, inconsequential and merely incidental to the other crime. Second, it must not be inherent in the nature of the other crime. And third, it must have some significance independent of the other crime in that it makes the other crime substantially easier to commit or lessens the risk of detention. See also Berry v. State, 668 So.2d 967 (Fla.1996).
In this case, Charles' confinement halted her interference with Maxwell's ability to deal with Young by first battering him, and thereafter while she was tied up, by attempting to rob him. It clearly made the attempted robbery easier to commit. It was also independent of kidnaping and not inherent in its nature.
Second, Maxwell argues that the trial court erred in applying the Prison Releasee Reoffender sentencing enhancement provisions in addition to the weapon enhancement provisions of section 775.087(1) to counts two (aggravated battery with a weapon) and five (kidnaping). He claims this violates double jeopardy.[6] However, the intent of the Legislature is dispositive of the issue as to whether double jeopardy bars separate convictions and sentences for offenses arising from a single episode. Boler v. State, 678 So.2d 319, 321 (Fla.1996).
The weapons use statute is an enhancement statute. Wright v. State, 767 So.2d 576 (Fla. 5th DCA 2000), rev. granted, 789 So.2d 352 (Fla.2001). Section 775.087(1) enhances the potential sentence rather than creating a new substantive offense. We do not think a double jeopardy violation occurred here. See State v. Whitehead, 472 So.2d 730, 732 (Fla.1985) (reclassification of offense for use of firearm plus three year mandatory minimum for use of firearm does not violate double jeopardy); Spann v. State, 772 So.2d 38 (Fla. 4th DCA 2000) (PRR sentence does not violate double jeopardy); Perez v. State, 772 So.2d 577 (Fla. 1st DCA 2000) (imposing habitual violent felony offender sentence following reclassification of attempted robbery offense for use of firearm does not violate double jeopardy).
In any event, we agree with the state that Maxwell failed to preserve this point for appeal. He did not raise an objection at sentencing nor did he file a motion to correct sentence under Florida Rule of Criminal Procedure 3.800(b)(2). Once a defendant's appellate brief is filed following the effective date of the amendment of rule 3.800, which was January 13, 2000, an appellate court should not address unpreserved, non-fundamental sentencing errors. Maddox v. State, 760 So.2d 89 (Fla.2000); Harvey v. State, 786 So.2d 595 *819 (Fla. 1st DCA 2001); Reese v. State, 763 So.2d 537 (Fla. 4th DCA 2000).
Third, Maxwell argues a double jeopardy violation occurred with regard to his enhanced kidnaping conviction, because he was convicted of kidnaping in the commission of aggravated battery on Charles with a weapon pursuant to section 775.087(1), (count five), and he was also convicted of an aggravated battery using the same weapon against the same victim in the same criminal episode (count six).
Section 775.087 provides:
Possession or use of weapon; aggravated battery; felony reclassification; minimum sentence
(1) Unless otherwise provided by law, whenever a person is charged with a felony, except a felony in which the use of a weapon or firearm is an essential element, and during the commission of such felony the defendant carries, displays, uses, threatens to use, or attempts to use any weapon or firearm, or during the commission of such felony the defendant commits an aggravated battery, the felony for which the person is charged shall be reclassified as follows:

(a) In the case of a felony of the first degree, to a life felony. (emphasis added)
Maxwell argues the enhancement of the kidnaping charge was improper, citing Bradham v. State, 657 So.2d 40, 41 (Fla. 1st DCA 1995). In Bradham, the defendant was convicted of kidnaping and committing an aggravated battery during the commission of one criminal offense. His kidnaping was reclassified under section 775.087(1) as a life felony and he was also convicted of an aggravated battery under section 784.045(1)(a)1. However, there was no weapon mentioned in the case.
The court in Bradham stated that as applied to that case, the reclassification statute required proof of a felony in which the use of a weapon is not an essential element, plus an aggravated battery in order to enhance the felony. The charge brought under section 784.045(a)(1) required proof of an aggravated battery, the same element required for enhancement. Because the two offenses did not require proof of a different element, the Bradham court concluded the defendant was being punished twice for the same offense.
However, in this case, proof of an aggravated battery on Charles was not an essential element needed to reclassify the kidnaping offense to a life felony, because Maxwell used a weapon. The statute allows reclassification on alternative grounds: one, where a defendant carries, displays, uses, etc., a weapon; or two, where a defendant commits an aggravated battery. Since the alternative means to enhance because of use/display of a weapon was available in this case, it is distinguishable from Bradham, where no weapon was involved.
Fourth, Maxwell argues his two aggravated battery convictions, which stemmed from counts two and three, were for the same actions committed at the same time and that this violated double jeopardy, as well as section 775.021(4)(b). Count two charged Maxwell with aggravated battery of Young during the course of which a weapon was used. Count three charged Maxwell with battery against Young during the course of which a weapon was used. Both are second degree felonies, but the state sought to elevate count two to a first degree felony by using the same weapon component required in count three. This was established by a special verdict.
Count three specifically requires the jury to find that the defendant used a *820 weapon as charged. Count two is a less specific variant of the same underlying offense stated a different way. Dual convictions for the same criminal act cannot be sustained. See State v. Anderson, 695 So.2d 309 (Fla.1997); Thompson v. State, 585 So.2d 492 (Fla. 5th DCA 1991), adopted, State v. Thompson, 607 So.2d 422 (Fla.1992).
The state argues that Maxwell's beating of Young with his fists was the subject of count two and that his stabbing of Young with a knife was the subject of count three. However, the information was not so worded and in any event, the beating and the stabbing occurred at the same time.
Section 784.045 provides:
(1)(a) A person commits aggravated battery who in committing battery:
1. Intentionally or knowingly causes great bodily harm, permanent disability, or permanent disfigurement; or

2. Uses a deadly weapon. (emphasis added)
In Bartee v. State, 401 So.2d 890, 892 (Fla. 5th DCA 1981), this court stated:

When a single statutory offense describes multiple alternative acts, each of which is prohibited, each separate prohibited act does not constitute a separate offense for double jeopardy purposes since there is but one statutory offense. Therefore a charge that an accused has violated a specific criminal statute results in jeopardy as to all alternative acts that could have been alleged and proved.... [I]f one is tried for aggravated battery by committing a battery with a deadly weapon ...., and is convicted or acquitted, he cannot thereafter be tried as to the same factual event for aggravated battery by committing a battery causing great bodily harm.... The alternative prohibited factual events set forth as subsections or alternatives in one criminal statute, constitute but one offense for which an accused cannot be twice placed in jeopardy because the legislature has chosen as a matter of form to make several distinguishable acts violative of but one statutory offense. (emphasis added)
Based on Bartee, two convictions for aggravated battery which are based on alternative means provided for in the statute for committing this offense were error. Here Maxwell was convicted of two counts of aggravated battery, one causing great bodily harm and the other for use of a deadly weapon. But the acts were perpetrated by Maxwell on the same victim at the same time. Only one conviction can stand.
Accordingly, we affirm in all regards, except for the double aggravated battery convictions and sentences, one of which we reverse. The judgment lists aggravated battery causing great bodily harm as "FF," and aggravated battery with a deadly weapon as "FS." However, section 784.045(2) lists both as second degree felonies. We therefore strike the aggravated battery causing great bodily harm conviction.
AFFIRMED in part; REVERSED in part.
THOMPSON, CJ., and SAWAYA, J., concur.
NOTES
[1] § 784.045(1)(a)1., Fla. Stat. (1999).
[2] § 784.045(1)(a)2., Fla. Stat. (1999).
[3] § 812.13(2)(a), Fla. Stat. (1999).
[4] § 787.01(1)(a)2., Fla. Stat. (1999).
[5] § 784.045(1)(a)2., Fla. Stat. (1999).
[6] U.S. Const. Amend. V; Fla. Const., art I, § 9.